UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANNER CONSTRUCTION CO., INC.,
a Florida Corporation and
GATEWAY ROLL-OFF SERVICES, LP,
a Nevada Limited Partnership,

  Plaintiffs

              CASE NO.: 8:09-CV-650-T-17TBM

v.

HILLSBOROUGH COUNTY,
a political subdivision of the
State of Florida,

  Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant, Hillsborough County's ("County"), Motion to Dismiss Complaint and Incorporated Memorandum of Law (Dkt. 10), and response thereto (Dkt. 16) filed by the Plaintiffs, Danner Construction Co., Inc. and Gateway Roll-Off Services, LP (collectively, "Danner"). For the reasons set forth below, the County's motion is **DENIED**.

### PROCEDURAL BACKGROUND

On April 7, 2009, Danner filed a complaint against Hillsborough County in the United States District Court for the Middle District of Florida. (Dkt. 1). Danner's complaint contains five (5) counts. For the purposes of this Order, only Counts I and II, federal causes of action for violation of Section I of the Sherman Act, will be addressed.

On May 20, 2009, the County filed a Motion to Dismiss and incorporated Memorandum of Law. (Dkt. 10). The County argues that Danner's Complaint must be dismissed under the state action doctrine based on the Supreme Court case of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. (Dkt. 10).

On June 9, 2009, Danner filed a response to the County's Motion to Dismiss. (Dkt. 16). In the response, Danner agrees with the County's analysis of the *Parker* doctrine and its application to government entities. (Dkt. 16, pages 4-5). However, Danner argues that the *Parker* doctrine does not apply in this case because the franchise agreements of the county are a per se violation of the Sherman Act by being a "hybrid restraint" on trade. The County does not address this argument in the motion to dismiss. (Dkt. 16).

## FACTUAL BACKGROUND

The following facts are taken from the Complaint in this cause and are accepted as true only for the purpose of resolving the Motion to Dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).

In 2006, Hillsborough County entered into franchise agreements, effective October 1, 2006 for seven (7) years, with three (3) waste collection companies: Waste Services of Florida, Inc., Waste Management Inc. of Florida, and Republic Services of Florida, LP.[1] These franchise agreements were entered into under the authorization granting franchises in Chapter 83-415, Laws of Florida. Pursuant to this law, Hillsborough County created the Solid Waste Collection Ordinance (Ordinance 96-34), which was amended in 2003.

---

[1] Republic Services of Florida, LP and Waste Management Inc. of Florida have each filed a Motion to Intervene in this matter. (Dkts. 11, 20). Danner has filed a response to both motions. (Dkts. 15; 21) These motions and responses will not be addressed until the Court receives the response to this Order from the County and makes a ruling on the issues in the Motion to Dismiss.

2

Danner asserts that under the Ordinance there are two broad classes of customers serviced by the franchisees: residential customers and commercial customers. Danner also asserts that the residential customers have their garbage and yard waste picked up at regular intervals each week and that the County sets and regulates the rates charged by the franchisees to residential customers. (Dkt. 1, p. 2). The three franchise collectors have been given designated service areas and granted the exclusive right and responsibility to provide residential collection service within its district. (Dkt. 1, p. 8). Commercial customers are required to use one of the franchise collectors to collect and dispose of the solid waste generated at its facility in the service area. (Dkt. 1, p. 9). If a commercial customer does not want to use one of the franchise collectors, it can self-haul the solid waste to a solid waste disposal facility. However, the Ordinance prohibits a commercial customer from hiring a non-franchised hauler and requires the commercial customer to utilize a mechanically uploading vehicle to dispose of solid waste at the Southeast County Landfill. (Dkt. 1, pp. 9-10). Danner claims it is "prohibitively expensive" for a commercial customer to operate its own mechanically uploading vehicle to dispose of the solid waste. (Dkt. 1, p. 10).

Danner further asserts that for commercial customers, the County provides no oversight as to rates charged, leaving the franchisees to charge the commercial customers highly inflated rates. Danner also asserts that the franchisees have been given "private regulatory power" to set the prices charged to commercial customers. (Dkt. 1, p. 2).

## STANDARD OF REVIEW

The County has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fla.R.Civ.P. 12(b)(1) and for failure to state a claim pursuant to Fla.R.Civ.P. 12(b)(6). (Dkt. 16).

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal based on a lack of subject matter jurisdiction. A party may make either a facial or factual challenge to a court's subject matter jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir.1990) (per curium). A facial attack on subject matter jurisdiction "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States,* 177 F.3d 936, 940 (11th Cir.1999), (quoting *Lawrence,* 919 F.2d at 1529).

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Pardus*, 551 U.S. at 2200. The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 65 (2007).

As a general proposition, the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at

4

1974. Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Pardus*, 551 U.S. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. On a motion to dismiss, the Court limits its considerations to the pleadings and exhibits attached thereto. *GSW v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

DISCUSSION

*I. Parker* Doctrine

The County has filed a Motion to Dismiss for failure to state a claim and lack of subject matter jurisdiction arguing that the County is entitled to state action immunity under the *Parker* Doctrine. (Dkt. 10). All facts alleged in the Complaint are taken as true and all reasonable inferences are drawn in the plaintiff's favor; however, the application of the state action doctrine is a question of law. *Federal Trade Commission v. Hospital Board of Directors of Lee County*, 38 F.3d 1184, 1187 (11th Cir. 1994) (hereinafter referred to as "*FTC*").

The *Parker* doctrine protects the anticompetitive actions of the states from federal antitrust laws. *FTC* at 1187. In *Parker v. Brown*, 317 U.S. 341, 350, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court reviewed the language of the Sherman Act and its history. The *Parker* Court refused to construe the Sherman Act as applying to the anticompetitive conduct of a state acting through its legislature because of the principles of federalism and state sovereignty. *Id.* at 350. The Court held that the intent of the Sherman Act was to prohibit <u>private</u> restraints on trade, not to nullify a state's control over its officers and agents in activities directed by its

5

legislature. *Id.* at 351 (emphasis added). The Sherman Act… "gives no hint that it was intended to restrain state action or official action directed by a state. The Act is applicable to 'persons' including corporations, and it authorizes suits under it by persons and corporations." *Id.* at 351 (internal citations omitted).

However, in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Supreme Court applied the *Parker* doctrine, with some modifications, to the anticompetitive actions of political subdivisions. The Court stated, "before a municipality will be entitled to the protection of the state action exemption from the antitrust laws, it must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy." *Id.* at 40. The Court then described and defined how clearly the "expressed state policy" must be articulated. The Court held that it is not necessary for the state legislature "to have stated explicitly that it expected the City to engage in conduct that would have anticompetitive effects." *Id.* at 42. Rather it "is sufficient that the statutes authorized the City to provide [services] and also to determine the areas to be served. We think it is clear that anticompetitive effects logically would result from this broad authority to regulate." *Id.* at 42. A clear articulation, therefore, "merely requires that anticompetitive conduct is the foreseeable result of the legislation" and the powers granted to the political subdivision. *FTC*, 38 F.3d at 1188-89.

The Court reasoned that requiring legislatures to state explicitly that it intends for the action to have anticompetitive effects is an unrealistic view of how legislatures work and of how statutes are written: "No legislature can be expected to catalog all of the anticipated effects of a statute of this kind." *Town of Hallie*, 471 U.S. at 43. In addition, requiring explicit authorization

6

by the State might "have deleterious and unnecessary consequences." *Id.* at 44. Requiring such "a close examination of a state legislature's intent to determine whether the federal antitrust laws apply would be undesirable because it would embroil the federal courts in the unnecessary interpretation of state statutes. Besides burdening the courts, it would undercut the fundamental policy of *Parker* and the state action doctrine of immunizing state action from federal antitrust scrutiny." *Id.* at 44, n 7.

The Eleventh Circuit also dealt with state action immunity as to a political subdivision in *FTC*, 38 F.3d. at 1187-1188. The court held that to obtain state action immunity under the *Parker* doctrine, an entity must show "(1) that it is a political subdivision of the state; (2) that, through statutes, the state generally authorizes the political subdivision to perform the challenged action; and (3) that, through statutes, the state has clearly articulated a state policy authorizing anticompetitive conduct." *Id.* at 1187-1188.

In the case at bar, the parties agree that Hillsborough County is a political subdivision of the state. (See Dkt. 10, p. 5; Dkt. 16, p.5). Danner also agrees "the County is authorized under state law to grant exclusive franchisees which would necessarily eliminate the right of Plaintiff Gateway and other non-franchised collectors from competing with the exclusive franchisee(s)." (Dkt. 16, p. 8). The point of disagreement between the parties is under both prongs two and three of the *FTC* test.

Under prong two – that, through statutes, the state generally authorizes the political subdivision to perform the challenged action - the County argues that the State has clearly authorized the County to do the complained-of practices pursuant to Chapter 83-415, Laws of Florida. The County contends that the State has expressly declared its intentions to displace

7

competition by stating in the Laws that the County has the ability to create franchises to eliminate competition for the health, safety, and welfare of the public. (Dkt. 10, pp. 6-8). Danner argues, however, that this prong is not met because the County does not show that the State has authorized the County to establish a hybrid restraint for commercial collection where the County has refused to implement the two substantive pricing provisions in Chapter 83-415, Laws of Florida. (Dkt. 16, pp. 7-11).

Under prong three of the test – that, through statutes, the state clearly articulated a state policy authorizing the anticompetitive conduct- the County argues that the State has articulated a clear policy authorizing the anticompetitive conduct because of the State's express provision for "elimination of competition among solid waste disposal and resource recovery facilities." The County also contends that because Section 19 of Ch. 83-415, Laws of Florida contains an express exemption from the Florida Antitrust Act, this expresses the State's preference that Hillsborough County's solid waste management system should not be subjected to the application of antitrust laws. (Dkt. 10, pp. 9-11). However, Danner argues that this prong is not met under the foreseeability issue addressed by the Courts because the State could not foresee that the County would sanction a hybrid restraint to allow the franchise collectors to charge commercial customers highly inflated prices for commercial collection service. (Dkt. 16, pp. 11-13).

## II. Hybrid restraints

In Danner's response to the County's Motion to Dismiss, Danner contends that the *Parker* doctrine does not apply where a hybrid restraint on trade exists. (Dkt. 16). Danner argues that the County has created a hybrid restraint with the franchise agreements by failing to

8

regulate rates for commercial collection service. The County did not address this matter in its Motion to Dismiss, even though it is the basis for the action against the County and is alleged in the Complaint. (See Dkt. 1, ¶¶ 3-5, 42-51, 48-50; Dkt. 16).

Certain restraints may be characterized as "hybrid," in that non-market mechanisms merely enforce private marketing decisions. *Fisher v. City of Berkeley, California*, 475 U.S. 260, 268, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986). Where private actors are granted a "degree of private regulatory power," the regulatory scheme may be attacked under §1 of the Sherman Act. *Id.* Further "[w]hen a state compels retailers to follow a parallel price policy, it demands private conduct which is forbidden by the Sherman Act." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 389, 71 S.Ct. 745, 95 L.Ed. 1035 (1951).

In *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) (hereinafter referred to as "*Midcal*"), the Supreme Court has provided the framework for evaluating claims of state action immunity under *Parker* by articulating a two-part test for immunity to apply. First, "the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; and second, the policy must be "actively supervised" by the State itself. *Id.* at 105. The challenged law in *Midcal* satisfied the first requirement for immunity by being clearly articulated and affirmatively expressed by state policy. However, it did not meet the second requirement of being "actively supervised" by the State itself, making the system a hybrid restraint on trade. *Id.*

In *Midcal*, the trade restraint entailed a degree of free participation by private economic actors. California required that all wine producers and wholesalers file fair trade contracts or price schedules with the State. If a wine producer did not set prices, wholesalers had to post a

9

resale price schedule for that producer's brands. No state-licensed wine merchant could sell wine to a retailer at other than those prices. *Id.* at 99. The Court concluded that the statute was preempted and *Parker* immunity was not available. The Court stated that "the State simply authorizes price setting and enforces the prices established by private parties, and it does not establish prices, review the reasonableness of price schedules, regulate the terms of fair trade contracts, monitor market conditions, or engage in any 'pointed reexamination' of the program. The national policy in favor of competition cannot be thwarted by casting such a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement." *Id.* at 105-06. In other words, the lack of active supervision over private pricing decisions rendered the regulations hybrid restraints. *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 888-889 (9th Cir. 2008).

In *Fisher*, 475 U.S. at 268-69, the Supreme Court again recognized the scheme in *Midcal* represented a hybrid restraint. However, a problem arises because of the uncertain relationship between the "active supervision" inquiry under *Midcal,* and the "hybrid/unilateral" inquiry under *Fisher*.

In *Fisher,* the Supreme Court created a dilemma to the *Midcal* inquiry when it stated that "[a] restraint imposed unilaterally by government does not become concerted-action within the meaning of [§ 1 of the Sherman Act] simply because it has a coercive effect upon parties who must obey the law." *Id.* at 267. Thus, *Fisher* appeared to preempt application of the preemption inquiry by holding that some types of regulations are immune from the *Midcal* analysis, depending upon whether the restraint can be characterized as a "unilateral" restraint or as a "hybrid" restraint. *See Id.* at 267-68.

10

The Ninth Circuit has explained and clarified this problem. In *Sanders v. Brown,* 504 F.3d 903 (9th Cir. 2007), the court confirmed that "where the state, acting as a sovereign, imposes restraints on competition," the state "is immune from antitrust liability, regardless of whether the restraint in question would satisfy the *Midcal* test." *Id.* at 918. Therefore, once the court determines that a restraint is unilaterally imposed by the state as sovereign, *Parker* immunity applies without further inquiry. If the restraint is not unilaterally imposed, but rather involves "a state's decision to let producers dictate market conditions to others," it is a hybrid restraint that is "illegal per se under the Sherman Act." *Id. Parker* immunity applies to the hybrid restraint only if it satisfies the two-part *Midcal* inquiry. *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886-887 (9th Cir. 2008).

In the case at bar, the Danner alleges that Hillsborough County has imposed a hybrid restraint on commercial customers for commercial collection service. (See Dkts. 1, 16). Danner argues that the franchise agreements between the County and the exclusive franchisees have led to commercial customers paying highly inflated prices for storage and removal of solid waste from their business operations (Dkts. 1, 16). Danner alleges that these inflated prices charged to commercial customers are subject to an illegal price fixing arrangement where, through a hybrid restraint, the franchise collectors are permitted to set the price for commercial collection service without any regulation or oversight by Hillsborough County and that this action by the County was not a foreseeable result of the legislation. (Dkt. 16). Danner further asserts that the County is required to regulate the rates and prices charged by its franchise collectors pursuant to Chapter 83-415, Laws of Florida but that it has failed to do so, thus creating the hybrid restraint. (Dkts. 1, 16). The County has not addressed these issues in its Motion to Dismiss.

III. Analysis for Motion to Dismiss

As stated, the County contends that Danner's action should be dismissed because it fails to state a claim upon which relief can be granted because the County is entitled to state action immunity under the *Parker* doctrine. However, if the County has engaged in a "hybrid restraint" on trade, as alleged by Danner, the County has committed a per se violation of the Sherman Act and is not entitled to immunity under the *Parker* doctrine.

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Pardus*, 551 U.S. 89, 127 S.Ct. at 2200. The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Further, the rules of pleading require only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. Under this analysis, Plaintiffs Danner have plead enough facts to state a claim that is plausible on its face, meeting the *Twombley* requirement.

Danner alleges in the complaint that the County provides no oversight as to prices charged commercial customers for the collections and removal of solid waste by the exclusive franchisees. The exclusive franchisees have actually been granted the private regulatory power to set the prices charged commercial customers and this arrangement has led to commercial customers paying highly inflated prices for the storage and removal of solid waste. (Dkt. 1, p. 2).

To support these allegations, Danner alleges specifically that the County and the franchisees entered into franchise agreements effective October 1, 2006. (Dkt. 1, p. 8). These

12

franchise agreements granted the franchisees the exclusive right to provide solid waste collection and removal within the franchisees designated areas. (Dkt. 1, p. 8). The franchisees' rates for residential collection and removal are regulated by the County. (Dkt. 1, p. 2). However, the franchisees have been granted the private regulatory power to set prices charged to commercial customers. (Dkt. 1, p. 2). The commercial customers are required to use one of the franchisees, or must remove the solid waste from the business themselves at a prohibitively high cost to the commercial customer. (Dkt. 1, p. 9).

Furthermore, unlike the framework for residential customers, the franchise collectors negotiate the charges for commercial collection service directly with the commercial customer, bill the commercial customers directly for these negotiated charges, and receive payment directly from the commercial customers. (Dkt. 1, p. 10). Danner alleges the County has not imposed rate regulation on commercial customers contrary to the statutes and Laws of Florida, which require the County to regulate rates for solid waste collection. (Dkt. 1, p. 10). The County has been informed that the rates charged by these franchise collectors are unreasonable and highly inflated; however, the County has taken no action to review these rates. (Dkt. 1, p. 11). Danner asserts it is being charged "approximately double" what Danner would customarily pay for comparable services provided by a non-franchised hauler. (Dkt. 1, p. 11). Plaintiff Gateway, a non-franchised hauler, is willing to provide commercial collection service for substantially less than what is being charged by the franchise collectors; however, Gateway is prohibited from removing solid waste within the designated franchise areas. (Dkt. 1, p. 12).

Danner further alleges that the County and the franchise collectors have knowingly entered into the franchise agreements and attached the agreements to the complaint. (Dkt. 1, p.

17 and attachments). These agreements are preempted by the Sherman Act as a hybrid restraint because the Ordinance has "obviated the need for the Franchise Collectors to act directly on their own to create this anticompetitive scheme." (Dkt. 1, p. 19).

Although required under state statute and laws to regulate the rates for solid waste collection and removal, the County does not collect any information to determine the total cost a commercial customer is charged for commercial collection service in the service area. (Dkt. 1, p. 11). Further, the County does not require the franchise collectors to reveal the total revenues collected from commercial customers; the County does not require the franchise collectors to reveal the net profits generated by the franchise collectors from commercial customers; and the County does not know whether the franchise collectors are providing solid waste management services on a cost effective basis, as required by state statutes and laws. (Dkt. 1, p. 12).

Therefore, based upon the assumption that all of the complaint's allegations are true, the factual allegations of Danner's complaint are enough to raise a right to relief above the speculation level set out in *Twombley*.

CONCLUSION

This Court has thoroughly reviewed all documents the parties have submitted for consideration on this matter. Although ordinarily this Court would agree with the County's analysis under the *Parker* doctrine, the Plaintiff has sufficiently alleged hybrid restraints in the complaint to require the case to go forth at this juncture and attempt to establish the claims made as to hybrid restraints. Danner's complaint pleads sufficient facts to give both fair notice of the claim as well as a plausible right to relief. Accordingly, it is

**ORDERED** that the County's Motion to Dismiss (Dkt. 10) is **DENIED** and the County shall have ten days from the date of this order to file its answer to the Complaint.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 15th day of July, 2009.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record